UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANILO MERA, on behalf of himself,
FLSA Collective Plaintiffs, and the Class,

                    Plaintiff,

            - against -

SA HOSPITALITY GROUP, LLC, CAFÉ
FOCACCIA, INC., doing business as Felice
Wine Bar, EIGHTY THIRD AND FIRST
LLC, doing business as Felice, FELICE
GOLD STREET LLC, doing business as
Felice, FELICE CHAMBERS LLC, doing
business as Felice, FELICE 240, LLC, doing
business as Felice, FELICE HUDSON,
LLC, doing business as Felice, FELICE
ROSLYN LLC, doing business as Felice,
FELICE MONTAGUE, LLC, doing
business as Felice, JOHN DOE
CORPORATION, doing business as Felice,
DIMITRI PAULI, and JACOPO
GIUSTINIANI,

                    Defendants.

**MEMORANDUM
OPINION & ORDER**

23 Civ. 3492 (PGG) (SDA)

PAUL G. GARDEPHE, U.S.D.J.:

      Plaintiff Danilo Mera brings this action against SA Hospitality Group, LLC, Café

Focaccia – a restaurant owned by SA Hospitality Group where Mera formerly worked – other

restaurants and corporate entities associated with SA Hospitality Group, and two individuals who

allegedly own, operate, or control these restaurants.  (Cmplt. (Dkt. No. 1) ¶¶ 8-21, 38)  The

Complaint asserts collective and class claims alleging that Defendants did not pay the required

minimum wage and overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201-219, and the New York Labor Law ("NYLL"), NYLL §§ 190-199A, 650-655.  (Id.,

First Cause of Action, ¶¶ 66-77, Second Cause of Action, ¶¶ 78-84)

Plaintiff further alleges – on an individual basis – that Defendant Café Focaccia subjected him to a hostile work environment premised on his sexual orientation, in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. (Id. at Third Cause of Action, ¶¶ 85-91, Fourth Cause of Action, ¶¶ 92-98)[1]

Defendants moved to compel arbitration as to all of Mera's claims. (Def. Mot. (Dkt. No. 18)) On June 3, 2023, Magistrate Judge Stewart D. Aaron granted Defendants' motion as to Mera's FLSA and NYLL claims, but denied the motion as to Mera's NYSHRL and NYCHRL claims. (See Order (Dkt. No. 32)) Mera appeals Judge Aaron's decision pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "Ending Forced Arbitration Act," the "EFAA," or the "Act"), Pub. L. No. 117-90, 136 Stat. 26 (codified at 9 U.S.C. §§ 401-402). (Pltf. Br. (Dkt. No. 38))

For the reasons stated below, Judge Aaron's order will be affirmed in part and reversed in part, and Defendants' motion to compel arbitration will be denied in its entirety.

## BACKGROUND

**I.    FACTS[2]**

Plaintiff Mera was employed by Defendant Café Focaccia as a "busser" from May 2022 to February 2023. He worked 38 hours per week. (Cmplt. (Dkt. No. 1) ¶¶ 11, 38-39)

---

[1] While the Complaint asserts sexual orientation discrimination claims as against all Defendants, these claims were voluntarily dismissed except as to Café Focaccia. (See Notice of Voluntary Partial Dismissal (Dkt. No. 58); Apr. 9, 2024 Order (Dkt. No. 59))

[2] Because the parties have not objected to Judge Aaron's factual statement, the Court adopts it in full. See Silverman v. 3D Total Solutions, Inc., No. 18 Civ. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true." (citation omitted)); Hafford v. Aetna Life Ins.

At the time of his hiring, Mera entered into an agreement with Café Focaccia that included a mandatory arbitration provision. (Anthony Decl., Exs. A-B (Dkt. Nos. 29-1, 29-2)) The arbitration provision states that,

> [t]o the maximum extent permitted by law, Employee agrees that any disputes arising out of or in any way relating to Employee's employment or termination from employment with Café Focaccia Inc, SA Hospitality Group or any affiliated entities or individuals shall be resolved exclusively by final and binding arbitration on an individual basis before one neutral arbitrator, applying the appropriate statutes of limitation. . . . The parties voluntarily and irrevocably waive any and all rights to have any Dispute heard or resolved in any forum other than through arbitration.

(Anthony Decl., Ex. B (Dkt. No. 29-2)) The arbitration provision further states that "[t]he parties agree that this Agreement is governed by the Federal Arbitration Act." (Id.)

### A.     **Wage and Hour Claims**

In connection with his FLSA and NYLL claims, Mera alleges – on behalf of himself and others similarly situated – that Defendants employed "invalid" policies concerning tips. (Cmplt. (Dkt. No. 1), First Cause of Action, ¶¶ 66-77, Second Cause of Action, ¶¶ 78-84)

Defendants compensate their tipped employees pursuant to the FLSA and NYLL "tip credit," which authorizes employers to pay tipped employees a lower minimum wage if those employees earn a certain threshold amount in tips. (Id. ¶¶ 40, 56; see 29 U.S.C. §§ 203(m) (tip credit), 206(a) (minimum wage); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3 (tip credit)) According to the Complaint, tipped workers at Defendants' restaurants – including servers, bartenders, barbacks, waiters, bussers, and food runners – are not paid in compliance with the FLSA and NYLL "tip credit," and are not paid the required minimum wage and overtime compensation. (Id. ¶¶ 28, 40-41)

---

Co., No. 16-CV-4425 (VEC) (SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

In the Complaint, Plaintiff Mera asserts that Defendants "were not entitled to claim any tip credit allowance" under the FLSA and NYLL because they did not (1) provide their tipped employees with notice that they were claiming a "tip credit" as part of the basic minimum hourly rate; (2) provide "proper wage statement[s]" showing the tip credit claimed for each pay period; and (3) maintain an accurate record of "daily tips earned" for each employee. (Id. ¶ 41)

Plaintiff further complains that Defendants required that he spend "more than twenty percent" of his workweek performing non-tip-producing duties, such as "handyman work, painting, sweeping the sidewalk, polishing silver and glassware, taking out the garbage, and cleaning the bathroom." (Id. ¶ 42) Defendants did not pay him the full minimum wage for his time spent performing non-tipped work, thereby violating the FLSA and NYLL. (Id.)

Mera contends that – because of these violations of the FLSA and NYLL – Defendants were not permitted to claim any tip credit allowance. (Id. ¶¶ 32, 56)

The Complaint further alleges that because of the "invalid tip credit" taken by Defendants, tipped employees were not paid at the appropriate "overtime premium for hours [that they] worked [in excess of] forty hours per week." (Id. ¶ 43)

The Complaint also alleges that Defendants employed a "time shaving" practice, and consistently did not pay him for all the hours he worked. (Id. ¶¶ 26, 44) According to Plaintiff, between May 2022 and June 2022, he was required to work "thirty minutes" before the start of his scheduled shift. (Id.) And between June 2022 and February 2023, "Plaintiff was required to come in two hours before his shift . . . to perform non-tipped activities." (Id.) Mera alleges that he was not paid for the "hours worked" outside his scheduled shifts, and that he and the putative class members are similarly situated with respect to these alleged time-shaving violations. (Id. ¶¶ 26, 32, 57)

**B.      Hostile Work Environment Claims**

Mera further alleges that Defendant Café Focaccia subjected him to a "hostile work environment" based on his sexual orientation.  (Id., Third Cause of Action, ¶¶ 85-91, Fourth Cause of Action, ¶¶ 92-98); Apr. 9, 2024 Order (Dkt. No. 59) (granting voluntary dismissal of hostile work environment claims as to all Defendants other than Café Focaccia))[3]

Mera claims that Defendant Café Focaccia "fail[ed] to address the constant harassment and abuse made against Plaintiff on the basis of his sexual orientation by his co-workers and [m]anager Marko [LNU]."  (Cmplt. (Dkt. No. 1) ¶ 88)

According to the Complaint, Plaintiff suffered the following "harassment and abuse" at Café Focaccia:  When Mera entered the restaurant's kitchen, his co-workers would "call Plaintiff 'puto,' 'pato,' or marica,'" – which are "homophobic slurs in Spanish."  (Id. ¶ 61) Manager Marko physically "harass[ed]" Plaintiff by "get[ting] close and touch[ing] Plaintiff's legs and grab[bing] Plaintiff's wrist and waist."  He also asked Plaintiff "things like, 'did you have good sex during your vacation.'"  (Id. ¶ 62)

Mera says that he complained to assistant manager Frank Joseph as well as Manager Marko about these incidents, but the managers "would just ignore him and tell him to 'go back to work.'"  (Id. ¶ 63)  The managers also told Mera that "they didn't want to hear any more complaints and that he was too dramatic."  (Id.)

Mera states that – "[a]s a result of the hostile work environment" – he requested a transfer to another restaurant operated by SA Hospitality Group.  (Id. ¶¶ 64, 89)  In February

---

[3]  As noted above, Plaintiff's hostile work environment claims are brought on an individual basis and not on a class basis.  (Id. ¶¶ 3-4)

2023, after Defendants denied that request, Mera decided that he "had to quit," because "he

could no longer handle the constant sexual harassment and abuse." (Id. ¶¶ 38, 64, 89)

## II.    **PROCEDURAL HISTORY**

### A.    **The Complaint and Defendants' Motion to Compel Arbitration**

The Complaint was filed on April 26, 2023. (Cmplt. (Dkt. No. 1)) As discussed

above, Mera brings,

(1) as a putative collective and class action, wage and hour claims under the FLSA and the NYLL (id. ¶¶ 66-84) (First and Second Causes of Action); and

(2) as an individual action, "hostile work environment and sexual orientation discrimination" claims under the NYSHRL and the NYCHRL. (Id. ¶¶ 85-98) (Third and Fourth Causes of Action).

As to the alleged wage and hour violations under the FLSA and the NYLL, the

Complaint asserts claims "on behalf of all non-exempt employees" who "have been subjected to

Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and

rules, all culminating in a willful failure and refusal to pay them their proper wages. . . ." (Id. ¶¶

1-2, 25-26, 66-84) In connection with these claims, Mera seeks the following relief: (1)

"[d]esignation of this action as a class action" and "[d]esignation of Plaintiff as

[r]epresentative[]" of the class; (2) a declaratory judgment that the Defendants' practices are

"unlawful under [the] FLSA and NYLL"; (3) "[a]n injunction against Defendants" barring them

"from engaging in each of the [alleged] unlawful practices, policies[,] and patterns" set forth in

the Complaint; and (4) damages for "unpaid wages, including overtime," "liquidated and/or

punitive damages," as well as an award of attorneys' fees and costs. (Id. at 24-25 (Prayer for

Relief))[4]

---

[4] The page numbers of documents referenced in this order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

The Complaint's hostile work environment claims under the NYSHRL and the NYCHRL are asserted only on behalf of Mera and only against Defendant Café Focaccia. (Apr. 9, 2024 Order (Dkt. No. 59) (granting voluntary dismissal of hostile work environment claims as to all Defendants other than Café Focaccia)) In connection with these claims, Mera seeks, inter alia, (1) "back pay and compensatory damages"; (2) "punitive damages"; and (3) an award of attorneys' fees and costs. (Cmplt. (Dkt. No. 1) at 24-25 (the Prayer for Relief))

On May 1, 2023, this Court referred this case to Judge Aaron for general pretrial supervision. (Dkt. No. 6) On May 9, 2023, Defendants moved to compel arbitration of Mera's claims (Def. Mot. (Dkt. No. 18)), and on May 19, 2023, Defendants amended their motion. (Def. Am. Mot. (Dkt. No. 27))

**B.    Judge Aaron's Order**

In a June 3, 2023 order, Judge Aaron denied Defendants' motion to compel arbitration with respect to Mera's NYSHRL and NYCHRL claims, but granted Defendants' motion with respect to Mera's FLSA and NYLL claims. (Order (Dkt. No. 32) at 8) Judge Aaron also stayed proceedings pending the outcome of arbitration. (Id.)

As to Mera's NYSHRL and NYCHRL claims, Judge Aaron finds that Mera "pleads a dispute within the scope of the [Ending Forced Arbitration Act]," that his claims "relate to the sexual harassment dispute," and that – under the Act – he cannot be forced to arbitrate these claims. (Id. at 5-6, 8) As to Mera's FLSA and NYLL claims, however, Judge Aaron concludes that arbitration in compliance with the parties' arbitration agreement may be compelled. (Id. at 6-8)

Judge Aaron begins by acknowledging that "Plaintiff has alleged claims that raise a dispute within the [Ending Forced Arbitration Act's] scope." He then considers whether the

"Arbitration Agreement is unenforceable [only] as to [the sexual harassment] claims . . . or as to the entire case." (Id. at 4)

In this regard, Judge Aaron concludes that,

> under the [Ending Forced Arbitration Act], an arbitration agreement executed by an individual alleging conduct constituting a sexual harassment dispute is unenforceable only to the extent that the case filed by such individual "relates to" the sexual harassment dispute, see 9 U.S.C. § 402(a); in other words, only with respect to the claims in the case that relate to the sexual harassment dispute.

(Id. at 6)  And because "Plaintiff's wage and hour claims under the FLSA and NYLL do not relate in any way to the sexual harassment dispute, they must be arbitrated. . . ." (Id. at 8)

**C.    Plaintiff's Appeal**

On July 17, 2023, Mera appealed Judge Aaron's order to the extent that it grants Defendants' motion to compel arbitration of his FLSA and NYLL claims.  (Pltf. Br. (Dkt. No. 38))  Defendants have not objected to Judge Aaron's order, but they oppose Plaintiff's appeal. See Def. Opp. (Dkt. No. 44))

Mera contends that Judge Aaron errs in "disregard[ing] the plain meaning of the [Ending Forced Arbitration Act's] text" by not construing the Act to "void" "any predispute arbitration agreement . . . with respect to the plaintiff's entire case, not just the plaintiff's sexual harassment claims."  (Pltf. Br. (Dkt. No. 38) at 5-6 (emphasis in original))  According to Mera, because he "has filed a single case containing both sexual harassment claims and wage claims" (Id. at 6), all of his claims are "non-arbitrable." (Id. at 4)

**DISCUSSION**

**I.    LEGAL STANDARDS**

**A.    Standard of Review**

"District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a

Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020), objections overruled, No. 10 Civ. 6950 (AT) (RWL), 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021).

Under Rule 72 of the Federal Rules of Civil Procedure, "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide," the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' if the reviewing court is left with the definite and firm conviction that a mistake has been committed." R.F.M.A.S., Inc. v. So, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010) (quotation marks and citation omitted). "Similarly, a finding is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Id. (quotation marks and citations omitted). "This is a highly deferential standard, and the objector thus carries a heavy burden." Khaldei v. Kaspiev, 961 F. Supp. 2d 572, 575 (S.D.N.Y. 2013) (citations omitted).

**B.    Motion to Compel Arbitration**

Under the Federal Arbitration Act (the "FAA"), an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." 9 U.S.C. § 2. The FAA provides that a party to an arbitration agreement may petition a district court for "an order directing that arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Hartford Accident & Indem. Co. v. Swiss Reinsur. Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001).

On March 3, 2022, Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, Pub. L. No. 117-90, 136 Stat. 26 (codified at 9 U.S.C. §§ 401-402), which amends the FAA.  Section 402(a) of the Act provides as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).

The Act defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4).  Moreover, "State law" – as used in the Act – includes municipal laws such as the NYCHRL.  See Johnson v. Everyrealm, Inc., 657 F. Supp. 3d 535, 552 n.14 (S.D.N.Y. 2023).

The Ending Forced Arbitration Act applies to claims that accrue on or after March 3, 2022, when the statute was enacted.  See Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022).

In resolving a motion to compel arbitration, courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," and "draw[] all reasonable inferences in favor of the non-moving party."  Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation, alteration, and internal quotation marks omitted).

## II.    ANALYSIS

As discussed above, Judge Aaron grants Defendants' motion to compel arbitration as to Mera's FLSA and NYLL claims, but denies Defendant's motion as to Mera's NYSHRL and NYCHRL claims.  (Order (Dkt. No. 32) at 8)  Mera appeals only that portion of Judge Aaron's

Order granting Defendants' motion to compel arbitration as to Mera's FLSA and NYLL claims. (See Pltf. Br. (Dkt. No. 38))  Defendants have not objected to Judge Aaron's order.

### A.    Whether Plaintiff's FLSA and NYLL Claims Are Subject to Arbitration under the Ending Forced Arbitration Act

Given that this action involves a claim of sexual harassment, the issue before the Court is whether the Ending Forced Arbitration Act operates to invalidate the applicable arbitration agreement as to all of Plaintiff's claims, or only as to those claims that implicate his sexual harassment allegations.

Judge Aaron concludes that the Ending Forced Arbitration Act blocks arbitration only as to Plaintiffs' NYSHRL and NYCHRL claims – which are premised on allegations of sexual harassment – and that Plaintiff's wage and hour claims should proceed to arbitration in accordance with the parties' arbitration agreement.  (See Order (Dkt. No. 32) at 8)  Plaintiff contends that Judge Aaron committed error in making this determination.  (Pltf. Br. (Dkt. No. 38))

### 1.    Applicable Law

Prior to passage of the Ending Forced Arbitration Act, federal courts pursued a strong public policy favoring arbitration and the enforcement of arbitration agreements.  For example, courts instructed that the FAA "embodies the 'liberal federal policy favoring arbitration agreements' and 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir. 2008) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).  In this regard, the Supreme Court noted that "[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered," a concern that "requires [courts to] rigorously enforce agreements to arbitrate."  Dean

Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985); see also CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012) ("[The FAA] requires courts to enforce agreements to arbitrate according to their terms."). Consistent with these principles, the Supreme Court instructed lower courts that "if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." KPMG LLP v. Cocchi, 565 U.S. 18, 19 (2011).

"Like any statutory directive," however, the FAA's policy favoring arbitration "may be overridden by a contrary congressional command." Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987).

In amending the FAA to render unenforceable arbitration provisions that would otherwise apply to claims premised on "sexual harassment" or "sexual assault," the Ending Forced Arbitration Act cuts backs on the prior federal policy strongly favoring arbitration and the enforcement of arbitration agreements:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).

The issue presented by this case is whether Congress intended to render void not only agreements to arbitrate disputes premised on sexual harassment and sexual assault, but also agreements to arbitrate disputes entirely unrelated to sexual harassment and sexual assault that are raised by a plaintiff in the same "case." See id. Judge Aaron concluded that that was not Congress's intent. (See Order (Dkt. No. 32) at 6-8) Plaintiff contends that Judge Aaron erred in making that determination. (Pltf. Br. (Dkt. No. 38) at 3-13)

The court in <u>Johnson v. Everyrealm, Inc.</u>, 657 F. Supp. 3d 535 (S.D.N.Y. 2023) was one of the first to grapple with this issue. In <u>Johnson</u>, an employee of Everyrealm – a digital real estate company – signed an arbitration agreement with his employer. <u>Id.</u> at 542. After the employee was terminated, he brought claims premised on a "'sexual harassment-filled toxic work environment,'" <u>id.</u> at 543 (quoting the operative complaint), alleging that his immediate supervisor "repeatedly pressured [him] . . . to have sex with colleagues, including herself, or with clients." <u>Id.</u> at 554.

The <u>Johnson</u> plaintiff also brought claims unrelated to sexual harassment, including that his supervisor had (1) discriminated against him in pay because of his race, in violation of NYLL § 194; (2) retaliated against him for reporting his concerns about a "'crypto gambling scheme,'" in violation of NYLL § 740; and (3) "'regularly demeaned [him] . . . at work on account of his race,'" in violation of 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL. <u>Id.</u> at 545-47 (quoting complaint).

In moving to compel arbitration under the parties' arbitration agreement, the <u>Johnson</u> defendants argued that "after a court, as here, has determined that the [Ending Forced Arbitration Act] applies to a sexual harassment claim," the Act "blocks arbitration of only the sexual harassment claims," and not as to "the entire case." <u>Id.</u> at 558. Judge Engelmayer rejected that argument, concluding that under the Ending Forced Arbitration Act – "at the election of the party making [a sexual harassment] allegation" – "pre-dispute arbitration agreements [are] unenforceable with respect to the entire case relating to that [sexual harassment] dispute," <u>id.</u> at 561, and "not merely [as to] the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute (for example, a claim of unlawful retaliation for a report of sexual harassment)." <u>Id.</u> at 559.

According to Judge Engelmayer, this result flows directly from the "ordinary meaning" of the language used in the Act:

> This text is clear, unambiguous, and decisive as to the issue here. It keys the scope of the invalidation of the arbitration clause to the entire "case" relating to the sexual harassment dispute. It thus does not limit the invalidation to the claim or claims in which that dispute plays a part.

(Id. at 558).

In so holding, Judge Engelmayer surveys "case" and "claim" as used in case law and as defined in dictionaries, and concludes that "case" "refers to the overall legal proceeding filed in a court," while "claim" "refers to a specific assertable or asserted right within such a proceeding." Id. at 559 (internal citations omitted). While acknowledging the possibility that a claim might be so "far afield [as to] be found to have been improperly joined with a claim within the [Ending Forced Arbitration Act]," id. at 562 n.23, Judge Engelmayer concludes that "Johnson's claims against Everyrealm and its executives all arise from his employment at Everyrealm and are clearly properly joined in a common lawsuit." Id.

Since Johnson, most courts in this District confronting the issue have concluded that where the Ending Forced Arbitration Act applies and is invoked by plaintiff, an arbitration agreement is unenforceable as to plaintiff's entire "case," and not just with respect to plaintiff's sexual harassment claims. See, e.g., Baldwin v. TMPL Lexington LLC, No. 23-CV-9899 (PAE) 2024 WL 3862150, at *7 (S.D.N.Y. August 19, 2024) (observing that "Johnson's holding has been widely followed by courts in this District"); Delo v. Paul Taylor Dance Foundation, Inc., 685 F. Supp. 3d 173, 180 (S.D.N.Y 2023) ("[W]here a dispute presents multiple claims – some related to sexual harassment, others not – the [Ending Forced Arbitration Act] blocks arbitration of the entire case, not just the sexual harassment claims."); Puris v. TikTok Inc., No. 24-CV-944 (DLC), 2025 WL 343905, at *6 (S.D.N.Y. Jan. 30, 2025) ("The [Ending Forced Arbitration Act] states

that an arbitration agreement is unenforceable with respect to 'a case' which relates to the sexual

harassment dispute. It does not say that such an agreement is unenforceable with respect to a

'claim' of sexual harassment." (internal citation omitted)); Diaz-Roa v. Hermes L., P.C., 757 F.

Supp. 3d 498, 532 (S.D.N.Y. 2024) ("[I]f the [Ending Forced Arbitration Act] is properly invoked

and applies, the pre-arbitration agreement is invalid and unenforceable with respect to the entire

case. . . . Congress knows how to use the narrower term 'claim' when it so intends." (internal

citations omitted)); Lambert v. New Start Cap. LLC, No. 1:24-CV-8055-GHW, 2025 WL

2295254, at *13 (S.D.N.Y. Aug. 7, 2025) ("[c]ourts in this district almost uniformly hold" that the

Ending Forced Arbitration Act invalidates pre-dispute arbitration agreements with respect to a

plaintiff's "entire case"); see also Kelly v. Rosenberg & Estis, P.C., No. 25-CV-4776 (CM), 2025

WL 2709157, at *4 (S.D.N.Y. Sept. 23, 2025) ("The EFAA demands only that the 'case' relate to

a sexual harassment dispute, not that each individual claim within the case must do so.").[5]

2. **Analysis**

As discussed above, Judge Aaron ruled that, "under the EFAA, an arbitration

agreement executed by an individual alleging conduct constituting a sexual harassment dispute is

---

[5] The weight of authority outside of this District is the same. See, e.g., Sheehan v. Everstory Partners, No. CV 24-6581, 2025 WL 2671056, at *11 (E.D. Pa. Sept. 17, 2025) ("[W]e conclude that 'if the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with respect to the plaintiff's entire case.'" (quoting Lambert, 2025 WL 2295254, at *13)); Bruce v. Adams & Reese, LLP, No. 3:24-CV-00875, 2025 WL 611071, at *14 (M.D. Tenn. Feb. 25, 2025) ("By a large majority, the district courts interpreting the EFAA so far . . . have concluded, based upon the statute's use of the term 'case,' that the EFAA precludes arbitration of the entire case, so long as the complaint includes a plausible sexual harassment/assault claim.") (collecting cases); Williams v. Mastronardi Produce, Ltd., No. 23-13302, 2024 WL 3908718, at *7 (E.D. Mich. Aug. 22, 2024) (noting that "the majority of the district courts that have addressed the issue" have ruled that "the EFAA precludes arbitration of this whole case"); Molchanoff v. SOLV Energy, LLC, No. 23CV653-LL-DEB, 2024 WL 899384, at *5 (S.D. Cal. Mar. 1, 2024) ("[T]he EFAA bars enforcement of the arbitration agreement between Plaintiff and [her employer] as to all claims in this case, and as to all Defendants in this case.").

unenforceable only to the extent that the case filed by such individual 'relates to' the sexual

harassment dispute." (Order (Dkt. No. 32) at 6 (citing 9 U.S.C. § 402(a)). And because

"Plaintiff's wage and hour claims under the FLSA and the NYLL do not relate in any way to the

sexual harassment dispute, they must be arbitrated, as the Arbitration Agreement requires." (Id.

at 8 (citing Cocchi, 565 U.S. at 22)) "To hold otherwise," Judge Aaron states, "would permit a

plaintiff to elude a binding arbitration agreement with respect to wholly unrelated claims

affecting a broad group of individuals having nothing to do with the particular sexual harassment

affecting the plaintiff alone." (Id. at 6-7) Judge Aaron finds Johnson distinguishable, noting that

Judge Engelmayer "did 'not have occasion . . . to consider the circumstances under which

claim(s) far afield might be found to have been improperly joined with a claim within the EFAA

so as to enable them to elude a binding arbitration agreement.'" (Id. at 7 (quoting Johnson, 657

F. Supp. 3d at 562 n.23))

On appeal, Plaintiff argues that Judge Aaron erred, and that this Court should

construe the EFAA to render the "predispute arbitration agreement . . . void with respect to the

. . . entire case," even though Plaintiff's wage and hour claims "do not amount to a sexual

harassment dispute." (Pltf. Br. (Dkt. No. 38) at 6-7 (emphasis omitted)

In considering Plaintiff's argument, the Court begins "with the statutory text,

exhausting 'all the textual and structural clues' bearing on its meaning and construing each word

'in its context and in light of the terms surrounding it.'" United States v. Bedi, 15 F.4th 222, 226

(2d Cir. 2021) (first quoting Wis. Cent. Ltd. v. United States, 585 U.S. 274, 283 (2018); then

quoting Leocal v. Ashcroft, 543 U.S. 1, 9 (2004)).

The text of the EFAA provides that "no predispute arbitration agreement or

predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed

under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). As other courts in this District have noted, the term "case" – as used in the EFAA – "captures the legal proceeding as an undivided whole. It does not differentiate among causes of action within it." Johnson, 657 F. Supp. 3d at 559 (citing dictionary definition of "case" as "a suit or action in law or equity"); see also Brownback v. King, 592 U.S. 209, 220 (2021) (Sotomayor, J., concurring) ("An 'action' refers to the whole of the lawsuit. Individual demands for relief within a lawsuit, by contrast, are 'claims.'" (internal citations omitted)).

Moreover, Congress used the term "claim" – rather than "case" – "elsewhere in the statute concerning the EFAA's effective date: Congress provided in a statutory note that the EFAA 'shall apply with respect to any dispute or claim that arises or accrues on or after March 3, 2022.'" Diaz-Roa, 757 F. Supp. 3d. at 532 (quoting Johnson, 657 F. Supp. 3d at 559 (in turn quoting Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022))). But "Congress selected the word 'case' and not 'claim' when it described the effect of the EFAA to matters to which it was applicable." Id. (citing Maine Cmty. Health Options v. United States, 590 U.S. 296, 314 (2020) (noting that courts "generally presume[ ] that when Congress includes particular language in one section of a statute but omits it in another, Congress intended a difference in meaning" (alteration in original)).

And "Congress's choice to amend the FAA directly with text broadly blocking enforcement of an arbitration clause with respect to an entire 'case' 'relating to' a sexual harassment dispute reflects its rejection . . . of the FAA norm of allowing individual claims in a lawsuit to be parceled out to arbitrators or courts depending on each claim's arbitrability." Johnson, 657 F. Supp. 3d at 561 (footnote omitted).

This Court further concludes that a claim "relates to" a sexual harassment dispute under the EFAA where, as here, that claim – like the sexual harassment claim – "arise[s] from [a plaintiff's] employment . . . and relate[s] 'to [a plaintiff's] own experience'" working for that employer. Baldwin, 2024 WL 3862150, at *8 (quoting Turner v. Tesla, Inc., 686 F. Supp. 3d 917, 926 (N.D. Cal. 2023)); see also Diaz-Roa, 757 F. Supp. 3d at 533 ("Virtually by definition, all of the claims to which the EFAA applies will arise from the relationship that the plaintiff has with his or her harasser or assaulter."); Johnson, 657 F. Supp. 3d at 562 n.23 ("[Plaintiff's] claims against [defendant] and its executives all arise from his employment at [defendant] and are clearly properly joined in a common lawsuit.").

Lambert v. New Start Cap. LLC, No. 1:24-CV-8055-GHW, 2025 WL 2295254 (S.D.N.Y. Aug. 7, 2025) is instructive on this point. In Lambert, plaintiffs sued their employer (and certain executives and managers at the company) alleging FLSA and NYLL wage and hour violations on behalf of themselves, and on behalf of a putative collective and class. Id. at *2-3; see also id. at *15 n.8. Plaintiff Lambert also asserted a claim for sexual harassment under the NYSHRL and NYCHRL. Id. at *3-4. After concluding that the arbitration agreement was – under the EFAA – void as to Lambert's sexual harassment claims, the Lambert court ruled that "[t]he EFAA applies to Lambert's . . . wage-and-hour claims as well," because where "'the EFAA is properly invoked and applies[,] the pre-arbitration agreement is invalid and unenforceable with respect to' the plaintiff's 'entire case.'" Id. at *13 (quoting Diaz-Roa, 757 F. Supp. 3d at 532). The Lambert court therefore denied defendants' motion to compel arbitration as to all claims asserted by Lambert, including her wage and hour claims. Id.[6]

---

[6] The Lambert court also decided, however, that the EFAA did not invalidate the arbitration agreement of plaintiff LeRouge, who had raised only wage and hour claims. Id. *14-17.

In attempting to avoid this result, Defendants point to the EFAA's legislative

history (see Def. Opp. (Dkt. No. 44) at 10-13), including the following floor statement of Senator

Joni Ernst:

> [W]hen I sat down earlier this week with the majority leader and the lead
> Republican sponsor of this bill, my friend from South Carolina, we agreed to
> come to the floor and ensure the congressional intent of the Ending Forced
> Arbitration of Sexual Assault and Sexual Harassment Act of 2022 was crystal
> clear. During our meeting, my colleagues agreed with me that this bill should not
> be the catalyst for destroying predispute arbitration agreements in all employment
> matters. Specifically, we agreed that harassment or assault claims should not be
> joined to an employment claim without a key nexus. Harassment and assault
> allegations are very serious and should stand on their own. The language of this
> bill should be narrowly interpreted. It should not be used as a mechanism to
> move employment claims that are unrelated to these important issues out of the
> current system.

(Id. at 11 (quoting 168 Cong. Rec. S624-01, S625 (Feb 10, 2022)) Similarly, Senator Lindsey

Graham stated that the EFAA does not "take unrelated claims out of the arbitration contract. So

---

"Reading the EFAA to allow LeRouge to piggyback off of Lambert's allegations in this way
'would permit [LeRouge] to elude a binding arbitration agreement with respect to wholly
unrelated claims affecting a broad group of individuals having nothing to do with the particular
sexual harassment affecting [Lambert] alone.'" Id. (alterations in original) (quoting Mera, 675 F.
Supp. 3d at 447). The Lambert court further points out that although the EFAA provides that in
"a class or . . . collective action alleging [sexual harassment]" the "named representative" may
elect to void any arbitration agreement or joint action waiver, 9 U.S.C. § 402(a), "Lambert is not
the named plaintiff of a class action or collective action alleging sexual harassment; she asserts
only individualized claims of sexual harassment. Therefore, the statute does not suggest that she
has the power to void the arbitration agreements or joint-action waivers of any other plaintiff."
Id. (footnote omitted). "A contrary reading of the statute would incentivize plaintiffs,
particularly collective or class action plaintiffs, with claims wholly unrelated to sexual assault or
sexual harassment, to find someone who could toss in an allegation of inappropriate conduct
sufficient to pass the EFAA pleading hurdle." Id. at *17 "This super-plaintiff would then shield
the entire action and all the other plaintiffs, none of whom themselves faced any sexual
harassment or themselves state a claim relating to sexual harassment, from the arbitration
provisions to which they assented." Id.

Here, however, Mera is the sole plaintiff, and the parties have not briefed the issue of whether
other plaintiffs would be able to avoid an arbitration agreement because of Mera's sexual
harassment claims under the NYSHRL and NYCHRL.

if you have got an hour-and-wage dispute with the employer, you make a sexual harassment, sexual assault claim, the hour-and-wage dispute stays under arbitration unless it is related. That is the goal." 168 Cong. Rec. S624-01, S625 (Feb 10, 2022).

However, "[w]here the text of a statute provides a 'clear answer,' as here, '[a court's] analysis ends there,' and 'any reliance on legislative history to reach a contrary result is precluded.'" Toxqui v. R&P Pizza Corp., No. 24-CV-03339 (LJL), 2025 WL 2430569, at *15 (S.D.N.Y. Aug. 22, 2025) (quoting Springfield Hosp., Inc. v. Guzman, 28 F.4th 403, 422 (2d Cir. 2022)).[7]

In sum, where – as here – the EFAA is properly invoked and applies, a pre-dispute arbitration agreement is invalid and unenforceable as to the plaintiff's entire case, and not just to plaintiff's sexual harassment claims. Accordingly, Judge Aaron's holding that Plaintiff's FLSA and NYLL claims must be arbitrated is clearly erroneous and contrary to law.

## CONCLUSION

For the reasons stated above, Judge Aaron's order granting in part and denying in part Defendants' motion to compel is affirmed in part and reversed in part. That portion of Judge Aaron's order denying Defendants' motion to compel arbitration of Plaintiff's NYSHRL and NYCHRL claims is affirmed. That portion of Judge Aaron's order granting Defendants' motion to compel arbitration of Plaintiff's FLSA and NYLL claims is reversed.

---

[7] In any event, the legislative history is more complicated than Defendants suggest. For example, Senator Durbin stated that "survivors should be allowed to proceed with their full case in court regardless of which claims are ultimately proven. I am glad that is what this bill provides." 168 Cong. Rec. S626-7 (daily ed. Feb. 10, 2022) (statement of Sen. Richard Durbin). And Congress declined to proceed with a competing bill that applied only to "claim[s]" of sexual harassment and sexual assault. S.3143, 117th Cong. (2021).

In accordance with Rule 16 of the Federal Rules of Civil Procedure, this court will conduct a case management conference in this case at **2:00 p.m. on December 4, 2025,** in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

By **December 1, 2025**, the parties will file a joint status letter and proposed Case Management Plan and Scheduling Order, in accordance with this Court's Individual Rules of Practice in Civil Cases. A model Civil Case Management Plan and Scheduling Order is available on the Court's website (https://www.nysd.uscourts.gov/hon-paul-g-gardephe).

Dated:  New York, New York
       November 14, 2025

                    SO ORDERED.

                    Paul G. Gardephe
                    United States District Judge